IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| AILEEN Y., in her capacity as parent and legal guardian of THE STUDENT D., | ) ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civ. No. 10-00454 ACK-RLP ) |
| DEPARTMENT OF EDUCATION, STATE OF HAWAIʻI | ) ) ) |
| Defendant. | ) ) ) |

## ORDER VACATING THE JULY 6, 2010, ORDER OF THE OFFICE OF ADMINISTRATIVE HEARINGS AND REMANDING FOR FURTHER PROCEEDINGS

### I. PROCEDURAL AND FACTUAL BACKGROUND[1/]

D.Y. ("Student") was born on April 6, 1988. (Aileen Y. Aff. ¶ 2.) He turned twenty on April 6, 2008, in the middle of the 2007-08 school year. (Id. ¶ 4.) He has Prader-Willi Syndrome, and received special education services from Defendant under the Individuals with Disabilities Education Act until the end of the extended 2007-08 school year. (Id. ¶¶ 6, 25.)

At an IEP team meeting on April 8, 2008, Student's mother, Plaintiff Aileen Y., requested that Defendant provide Student with special education services under the IDEA until his

_____

[1/] The facts as recited in this order are for the purpose of disposing of this review of the administrative hearings officer's decision. They are not to be construed as findings of fact that the parties may rely on in future proceedings.

twenty-second birthday; that is, until he was no longer "between the ages of 3 and 21, inclusive." 20 U.S.C. § 1412(a)(1)(A). Defendant refused to provide continued services on the basis that Student had aged out of eligibility for special education. (Admin. R. Ex. 5 at 34, 38.)

On July 31, 2009, Plaintiff requested another IEP team meeting in light of the decision in <u>B.T. ex rel. Mary T. v. Department of Education, State of Hawaii</u>, 637 F. Supp. 2d 856 (D. Haw. 2009). (Aileen Y. Aff. Ex. B.) Defendant denied that request in a letter dated August 4, 2009. (<u>Id.</u> Ex. C.)

On April 8, 2010, at 4:48 p.m., via fax, Plaintiff filed a request for a due process hearing concerning both the denial of continued services at the April 2008 IEP team meeting and the denial of an additional IEP team meeting in 2009. (Admin. R. Ex. 1 at 2.) This action arises out of the administrative hearings officer's dismissal of that request and the officer's alternative grant of summary judgment in favor of Defendant. (Admin. Decision at 6.) The dismissal was based on a finding that the request for a due process hearing was untimely. (<u>Id.</u>) The grant of summary judgment was based on a finding that Defendant had not applied an age-out rule, standing alone, to deny continued special education services to Student. (<u>Id.</u>)

Because of the procedural posture of this case, the factual record is relatively undeveloped. Yet the record before

the administrative hearings officer was sufficient to preclude either dismissal or summary judgment in Defendant's favor. The Court will therefore vacate the officer's decision and remand for additional proceedings.

## II. STANDARD

In evaluating an appeal of an administrative decision under the IDEA, a court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C).[2]

The statutory requirement "that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1982). Rather, "due weight" must be given to the findings in the administrative proceedings. Id.

The amount of deference given to administrative findings in this context is a matter of judicial discretion. See Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 891

---

[2] An amendment to the IDEA, effective July 1, 2005, affected the subsection number at which this provision appears in the statute but did not affect the text of the provision. Compare 20 U.S.C. § 1415(i)(2)(B) (in effect prior to July 1, 2005) with 20 U.S.C. § 1415(i)(2)(C) (effective July 1, 2005).

(9th Cir. 1995) (quoting <u>Gregory K. v. Longview Sch. Dist.</u>, 811
F.2d 1307, 1311 (9th Cir. 1987)).  A court must "consider the
findings 'carefully and endeavor to respond to the hearing
officer's resolution of each material issue,' but 'is free to
accept or reject the findings in part or in whole.'"  <u>Id.</u>
(quoting <u>Gregory K.</u>, 811 F.2d at 1311).  "When exercising its
discretion to determine what weight to give the hearing officer's
findings," a court may "examine the thoroughness of those
findings" and accord greater deference when they are "'thorough
and careful.'"  <u>Id.</u> (quoting <u>Union Sch. Dist. v. Smith</u>, 15 F.3d
1519, 1524 (9th Cir. 1994)).

A court's inquiry in reviewing administrative decisions
under the IDEA is twofold:  "First, has the State complied with
the procedures set forth in the Act?  And second, is the
individualized educational program developed through the Act's
procedures reasonably calculated to enable the child to receive
educational benefits?  If these requirements are met, the State
has complied with the obligations imposed by Congress and the
courts can require no more."  <u>Rowley</u>, 458 U.S. at 206-207
(footnotes omitted); <u>see also</u> <u>Smith</u>, 15 F.3d at 1524.

### III. DISCUSSION

**A.**        **Dismissal of the Request for a Due Process Hearing**

The administrative hearings officer determined that
April 8, 2010, was the last day on which the request could have

been timely filed.  The request did arrive via fax on that day, but not until 4:48 p.m., eighteen minutes after the close of business.  (Admin R. Ex. 1 at 2.)  Because the fax arrived after the close of business, the officer deemed the request to have been untimely filed, and accordingly dismissed the request. (Admin. Decision at 4.)

       The dismissal was incorrect for three reasons.  First, nothing in the statute of limitations indicates that a request filed via fax must arrive before the close of business to be timely.  Second, it is not clear from the record that Plaintiff knew or should have known of the denial of continued special education by April 8, 2008.  Third, the request for a due process hearing concerned two separate actions.  One of them occurred in 2009, well within the two-year limitations period.

## 1. When the Request Was Filed

       First, the statute of limitations indicates that a request for a due process hearing must be filed within two years of the challenged action, but it does not indicate a time of day by which a request must be filed.  See 20 U.S.C. § 1415(f)(3)(C) ("A parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint."); see also Haw. Code R. § 8-60-65(f) (same). Nor does a time-of-day limitation appear in the Procedural

Safeguards Notice that Defendant provided to Plaintiff. (Admin.
R. Ex. 12 at 144.) The faxed request arrived on April 8, 2010,
exactly two years after the April 2008 IEP team meeting.
According to the terms of the statute and the materials that
Defendant provided to Plaintiff, the request was timely, even
assuming that Plaintiff knew or should have known of the denial
of continued special education services on April 8, 2008.

In its efforts to add a new requirement to the plain
text of the statute of limitations, Defendant relies on the
administrative rules for the Department of Commerce and Consumer
Affairs (the agency that contains the Office of Administrative
Hearings). According to those rules, which are not specific to
requests for due process hearings, "[t]he hours of a day during
which documents will be accepted for filing by the authority or
hearings officer shall be those specified in section 80-1, HRS."
Haw. Code R. § 16-201-14.

At one time, the specified section of the Hawaiʻi
Revised Statutes set business hours as 7:45 a.m. until 4:30 p.m.
But that section was repealed effective July 1, 2002, as
Defendant acknowledges. See 2000 Haw. Sess. Laws 914, 916. The
current version of Hawaiʻi's office-hours statute does not
contain any express times for business operations, but rather
leaves the determination of the state's business hours to the
Governor. See Haw. Rev. Stat. § 78-1.6 ("Offices of the State

and counties shall be open for the transaction of public business as determined by the chief executive.").[3/]

Defendant has not produced evidence of the Governor's determination. Yet even assuming that the Governor has determined that State offices shall be closed each day at 4:30 p.m., that determination would not make the request for a due process hearing untimely. The statute concerns the times of day that offices will be staffed. As evidenced by this case, an office need not be staffed to receive a fax. The Court will not read a time-of-day limitation into the statute of limitations where neither Congress nor Defendant—in its own regulations concerning the IDEA—has included one.[4/]

## 2. When Plaintiff Knew of the Denial

Second, the Court rejects the administrative hearings officer's finding that Plaintiff knew or should have known about the denial of continued special education services by April 8, 2008.[5/] (Admin. Decision at 4.) The statute of limitations runs

---

[3/] Both parties assert that section 78-1.6 replaced section 80-1 upon the latter section's repeal. The statutes and session laws themselves do not mention this replacement, but the Court assumes for the sake of argument that it occurred.

[4/] Because of the resolution of this issue, the Court need not address Plaintiff's position that the federal rules of civil procedure and the local rules of this district court govern the deadline for filing requests for due process hearings.

[5/] In its supplemental brief in this action, Defendant claimed that an IEP team meeting that occurred in March 2008 is

(continued...)

from when the parent "knew or should have known" of the challenged action. See 20 U.S.C. § 1415(f)(3)(C). In this case, the IEP and the Prior Written Notice of Department Action both suggest that at the conclusion of the IEP team meeting on April 8, 2008, the final decision to deny services had not yet been made. Both documents indicate that the mother requested an additional year of services based on the IDEA, and that Defendant's representatives on the IEP team promised to contact the department and check.

Specifically, the April IEP contains the following note: "[Student's] mother requested . . . an additional school year of service from the DOE in order to give [Student] the opportunity for a smoother transition from high school to his post-high school program. Administrator is going to ask DOE District office about this request. The request for services for the 2008-2009 school year was rejected." (Admin. R. Ex. 5 at

---

[5]/ (...continued)
the starting point of the limitations period. The March meeting was the meeting at which the school first indicated that it would cease providing special education services to Student at the end of the extended school year. But Plaintiff's argument that Student was entitled under the IDEA to education through age twenty-one does not appear to have been raised until April, so the April IEP, not the March IEP, is the challenged action.

In any event, at the April IEP team meeting, Defendant's representatives on the IEP team stated that they would have to check with the district concerning Plaintiff's request for additional service under the IDEA. (Admin. R. Ex. 5 at 34, 38.) This statement superseded any final decision allegedly made at the March meeting.

34.) The prior written notice contains a similar statement: "Extending services into the 2008-2009 school year was proposed by mother. Administrator was to clarify this proposed action with the school district. The proposal has been denied. The law only allows the DOE to provide services up to age 20." (Id. at 38.)[6]

While both of these documents contain the ultimate disposition of the query to the district, it appears that the denial had not yet been made by the end of the April 2008 IEP team meeting. Plaintiff submitted an affidavit supporting that conclusion. (Aileen Y. Aff. ¶¶ 21 ("When I left the April 8, 2008 IEP team meeting I believed that no final decision . . . had been definitively made.").) She also stated that she did not know of the decision until several days later. (Id. ¶ 23.)

Of course, if Plaintiff did not know (and should not have known) of the outcome until even one day after the IEP team meeting, the request for a due process hearing was timely. This is the case even if requests for due process hearings must arrive by the close of a business day to be timely. Particularly on a

_____

[6] The documents are both dated April 8, 2008. It is unclear whether Defendant actually contacted the school district and completed the documents on the same day as the meeting or if the documents simply bear the date on which the meeting was held. At the hearing, Defendant's counsel stated that he did not know when the district's determination was obtained.

motion to dismiss, Plaintiff's position should have been credited. Dismissal was therefore erroneous.

### 3. When the Second Challenged Action Occurred

Finally, dismissing the entirety of the request for a due process hearing was erroneous because the request concerned two challenged actions by Defendant, one of which was well within two years of April 8, 2010. The first subject of the request was the previously discussed April 2008 IEP. (Admin. R. Ex. 1 at 2.) The second was Defendant's refusal to reconvene an IEP team meeting in 2009 to consider a new judicial interpretation of Hawaiʻi's implementation of the IDEA. (<u>Id.</u>) Even if the request was untimely as to the first challenged action, it was timely as to the second.

Plaintiff's request for a due process hearing is based in part on a letter that Plaintiff sent in July 2009, requesting an additional IEP team meeting in light of the decision in <u>B.T. ex rel. Mary T. v. Department of Education, State of Hawaii</u>, 637 F. Supp. 2d 856 (D. Haw. 2009). The <u>B.T.</u> court held that Hawaiʻi's age-out policy for special education was inconsistent with the IDEA if used as the sole basis for denying continued special education.[7/] <u>See id.</u> at 866; (<u>see also</u> Aileen Y. Aff.

---

[7/] The <u>B.T.</u> case, which should have precluded the administrative hearings officer's alternative ruling concerning summary judgment, will be discussed in more detail in the next section.

Ex. B.).  Despite <u>B.T.</u>'s apparent applicability, the department refused to convene a new IEP team meeting, asserting in an August 2009 letter in response that it had decided not to apply the <u>B.T.</u> ruling to any other student.  (<u>Id.</u> Ex. C.)

The request for a due process hearing was submitted well within two years of the 2009 letters.  So dismissing the request as untimely was erroneous, at least as far as the request concerned those letters and <u>B.T.</u>'s applicability to Student's special education.

**B.**          **<u>Summary Judgment in Favor of Defendant</u>**

In an alternative holding, the administrative hearings officer granted summary judgment to Defendant.  The officer noted that Student continued to receive special education from April 6, 2008, his twentieth birthday, until the end of the extended school year on July 18, 2008.  (Admin. Decision at 5.)  The officer concluded that "[a]s the DOE continued to provide Student services past his 20th birthday, it can not be said that the DOE is applying a <u>per se</u> rule to cut off benefits to special education students at age 20."  (<u>Id.</u> at 5-6.)  The administrative hearings officer's analysis is flawed, and the Court accords it no deference.

### 1. The B.T. Case

In the administrative process, Defendant consistently gave only one reason for denying additional education to Student:

that he had aged out of the program.  (Admin R. Ex. 3 at 12
("[Student] had aged out of Special Education for Chapter 56 in
school year 2007-2008."); id. Ex. 5 at 20 ("The law at that time
and currently allows the Student to receive services until his
twentieth birthday.  In this case, the Student's services were
extended past his twentieth birthday and through ESY 2008."); id.
at 38 ("The law only allows the DOE to provide services up to age
twenty.").)

        The given reason for denial makes this case very
similar to another case that has a lengthy history in this
district, B.T. ex rel. Mary T. v. Department of Education, State
of Hawaiʻi, Civ. Nos. 08-00356 DAE-BMK & 09-00059 DAE-BMK.[8/]  B.T.
was born on July 4, 1988, so his birthday, like Student's, came
before the end of the extended school year.[9/]  See B.T. ex rel.
Mary T. v. Dep't of Educ., State of Hawaii (B.T. I), 637 F. Supp.
2d 856, 859 (D. Haw. 2009).  Just as in this case, the Department
of Education offered B.T. services through the end of the
extended school year after his twentieth birthday, that is, from

---

        [8/] The B.T. parties were more recently before a court in
this district in Civ. No. 10-00456 SOM-RLP, and had previously
been before another court in this district in Civ. No. 05-00497
HG-LEK and Civ. No. 05-00772 HG-BMK.

        [9/] It is of no moment that B.T.'s birthday occurred during
the extended school year and Student's occurred during the
ordinary school year.  In both cases, Defendant followed its
policy of allowing students to continue until the end of the
extended school year following their twentieth birthdays.

July 4, 2008 through July 28, 2008. <u>See</u> <u>id.</u> at 860. And just as in this case, the Department informed B.T.'s mother that B.T. would not receive services the following school year because his twentieth birthday had passed before the beginning of that school year. <u>See</u> <u>id.</u> Finally, just as in this case, the only reason given for the termination of services for B.T. was that he had "age[d] out" of eligibility. <u>Id.</u> at 859.

One of the main issues in <u>B.T.</u> was whether Hawai'i's age limit for special education was consistent with the IDEA, that is, whether there was any State law or practice in Hawai'i that was inconsistent with providing special education to students who were twenty-one.[10] The <u>B.T.</u> court determined that there was no law or practice in Hawai'i to preclude students

---

[10] As a condition for federal funding for special education, the IDEA requires in general that a "free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive." 20 U.S.C. § 1412(a)(1)(A). But that requirement is not absolute:

The obligation to make a free appropriate public education available to all children with disabilities does not apply with respect to children . . . aged 3 through 5 and 18 through 21 in a State to the extent that its application to those children would be inconsistent with State law or practice, or the order of any court, respecting the provision of public education to children in those age ranges.

<u>Id.</u> § 1412(a)(1)(B)(i). Thus if a state by law, practice, or court order provides public education to students between the ages of three and five or between the ages of eighteen and twenty-one, it must also provide a free appropriate public education to children of those ages with disabilities.

without disabilities from beginning a school year at age twenty, and therefore concluded that Hawaiʻi's age-out policy, standing alone, could not justify the denial of special education services.[11/] See B.T. I, 637 F. Supp. 2d at 866 ("[B]ecause Hawaii schools provide education through 21 years old for general education students, it must provide a FAPE for [special education students through 21 years old] when the IEP so recommends.");[12/] B.T. ex rel. Mary T. v. Dep't of Educ., State of Hawaii (B.T. II), Civ. Nos. 08-00356 DAE-BMK & 09-00059 DAE-BMK, 2009 WL 4884447, at *9 (D. Haw. Dec. 17, 2009) ("Defendant is enjoined from denying special education services based solely on a

---

[11/] The age-out policy is set forth in Hawaiʻi's administrative rules, which provide that to be eligible for special education, a student must be "[u]nder twenty on the first instructional day of the official school year calendar set by the department." Haw. Code R. § 8-60-38(d)(2). A student's eligibility does not terminate immediately upon the student's twentieth birthday. Rather, a student who turns twenty during the school year retains eligibility "for the full school year, including extended school year . . . ." Id. (emphasis added).
     Section 8-60-38 replaced section 8-56-15 when chapter 56 was repealed on November 23, 2009. The prior version was in effect when B.T. was decided, but the new rule is nearly identical to the old one. See Haw. Code R. § 8-56-15(3)(B) (2008).

     [12/] B.T. I refers to a December 2008 order concerning an earlier motion for summary judgment in that case. See 637 F. Supp. 2d at 862 ("This Court has already addressed the question of State law for the provision of FAPE to students 18 to 21 years old . . . . [T]his Court found that there is no consistent age restriction for general education students under Hawaii law and so the exception provided in the IDEA does not apply."). The December 2008 order is available as ECF No. 54 on the docket for Civ. No. 08-00356 DAE-BMK.

student's attainment of age 20.");[13/] see also B.T. ex rel. Mary
T. v. Dep't of Educ., State of Hawaii (B.T. III), 676 F. Supp. 2d
982, 986 (D. Haw. 2009) ("Defendant may not rely on HAR § 8-56-
15(3)(B) to limit B.T.'s services because under State statute and
practice, general education students are allowed to continue
education beyond age 20 under certain circumstances.  The State
of Hawaii must comply with the IDEA's provision of special
education through age 21 if the IEP team determines that such
education is warranted.").

## 2. Applicability of B.T.

Although the parties did not address the issue, the
Court must determine whether B.T. applies to this case given a
new statute that became effective on July 1, 2010.

---

[13/] The B.T. court was forced to make the same ruling
repeatedly because the Department of Education continued to press
the same argument throughout the proceedings.  See B.T. II, 2009
WL 4884447, at *6 ("Defendant has not submitted new facts or
arguments in its motion for summary judgment, or in its
opposition to Plaintiff's motion, to contradict this Court's
understanding of the statutes and rules.  Instead, Defendant
relies on the same arguments and evidence twice rejected by this
Court in its prior orders.")
     The Department has continued its stance in this case by
refusing to convene another IEP team meeting for Student in light
of B.T.  (See Aileen Y. Aff. Ex. C ("The Department of
Education's stance at this point in time is that the [B.T.] case
only applies to the student BT; therefore, it will not be
applying Judge Ezra's order to any other student.").)
     The Court rejects Defendant's position, which Defendant
continued to press at the hearing, that B.T.'s holding was
limited to the student in that case.  B.T.'s holding is one of
general applicability and should have been applied by the
administrative hearings officer.

When <u>B.T.</u> was decided, students eighteen years or older
were statutorily prohibited from entering tenth grade.  <u>See</u> <u>B.T.</u>
<u>I</u>, 637 F. Supp. 2d at 863.  There were no express age limits in
the statute for entering eleventh or twelfth grade, although a
section of the School Code stated that "a student will be
'overage' for the 12th grade at 20 years old."  <u>See</u> <u>id.</u>  Also,
principals had express statutory discretion to enroll students
who were over-age (according to the age limits), provided that
those students did not require special education.  <u>See id.</u>  But
principals lacked express discretion to enroll over-age students
who did require special education.  <u>See</u> <u>id.</u>

Hawaiʻi has enacted a new eligibility statute for
public education in response to <u>B.T.</u>  (In the words of the Senate
Committee on Education and Housing, "Your Committee finds that
this measure is an attempt to address Judge Ezra's ruling by
providing a consistent age limit for both general education and
special education to students to be admitted to Hawaii's public
schools."  Stand. Com. Rep. No. 2635, at 2.)  The new statute
provides:

> No person who is twenty years of age or over
> on the first instructional day of the school
> year shall be eligible to attend a public
> school.  If a person reaches twenty years of
> age after the first instructional day of the
> school year, the person shall be eligible to
> attend public school for the full school
> year.

-16-

Haw. Rev. Stat. § 302A-1134(c).  In other words, the state
responded to <u>B.T.</u> by preventing <u>all</u> students from beginning a
school year at age twenty rather than by allowing students with
disabilities to remain in school through age twenty-one.

The new statute is the subject of a pending class
action challenging its validity.  <u>See</u> <u>R.P.-K. ex rel. C.K. v.</u>
<u>Dep't of Educ., State of Hawai'i</u>, 272 F.R.D. 541, 543 (D. Haw.
2011) (granting class certification).  The validity of the new
statute is not before the Court in this case, because the new
statute did not take effect until July 1, 2010, well after the
denials at issue.  <u>See</u> 2010 Haw. Sess. Laws 377; <u>see also</u> <u>C.B. ex</u>
<u>rel. N.B. v. Dep't of Educ., State of Hawai'i</u>, Civ. No. 10-00317
DAE-LEK, 2010 WL 5389785, at *4 n.3 (D. Haw. Dec. 22, 2010)
(noting the Department of Education's concession that the new
statute did not apply retroactively where "it was not effective
until July 1, 2010, two months after the Hearing Decision and one
year after C.B.'s IEP meeting").  The Court will not apply the
new statute retroactively.

This case differs slightly from <u>C.B.</u> in that the
administrative hearings officer's decision was issued on July 6,
2010, five days after the new statute became effective.  But both
denials at issue in this case took place long before the new
statute became effective.  Retroactive application of the new
version of the statute would conflict with <u>B.T.</u> and other

-17-

decisions of courts in this district, and would strip Plaintiff of rights that existed before the new statute went into effect. Also, Defendant did not even alert the Court to the new statute's existence, much less argue that it should apply retroactively. Finally, neither the statute nor its legislative history contains expressed or obviously intended retroactive effect. The Court therefore will not apply the new version of section 302A-1134(c) retroactively. <u>See</u> Haw. Rev. Stat. § 1-3 ("No law has any retrospective operation, unless otherwise expressed or obviously intended."); <u>see also</u> <u>Hawai'i Med. Ass'n v. Hawai'i Med. Serv. Ass'n, Inc.</u>, 148 P.3d 1179, 1209 (Haw. 2006) ("Neither the language of the statute itself nor the legislative history of the amendment give any expressed indication that the amendment should be applied retroactively."); <u>Landgraf v. USI Film Prods.</u>, 511 U.S. 244, 270 ("Since the early days of this Court, we have declined to give retroactive effect to statutes burdening private rights unless Congress had made clear its intent."). The Court will analyze the case under the standard set forth by <u>B.T.</u>

### 3. Analysis under B.T.

Because Student was allowed to stay in school after his twentieth birthday through the end of the extended school year, the administrative hearings officer concluded that no per se age-out rule had been applied. (Admin. Decision at 5-6 ("As the DOE continued to provide Student services past his 20th birthday, it

-18-

can not be said that the DOE is applying a <u>per se</u> rule to cut off benefits to special education students at age 20.").) But B.T. was also allowed to stay in school after his twentieth birthday until the end of the extended school year. Hawaiʻi's age-out policy specifically allows for students to remain in school until the end of the extended school year following their twentieth birthdays. Haw. Code R. § 8-60-38(d)(2). Defendant's actions in both this case and in <u>B.T.</u> were straightforward applications of the age-out policy.

<u>B.T.</u> forbids using the age-out policy that was in place until 2010 as the sole basis for denying special education. From the record that was before the administrative hearings officer, that appears to be exactly what happened in this case. The administrative record contains no rationale other than Student's age for the denial of continued special education. The officer therefore should have denied the department's motion for summary judgment.[14]

### 4. Defendant's New Evidence

Defendant submitted a declaration from the vice principal of Student's high school claiming that the IEP team had concluded that Student had reached a plateau and would not benefit from additional special education services. (Richard

---

[14] Plaintiff does not appear to have moved for summary judgment in the agency, so whether summary judgment should have been granted to Plaintiff is not before the Court.

Reidy Decl. ¶¶ 11-17.)  This declaration, containing an
alternative rationale for denying continued services, is not a
sufficient basis for summary judgment in Defendant's favor.[15/]
Plaintiff maintains that Defendant's only reason for denying
another year of education was Student's age, and the record amply
supports that position.  In fact, the administrative hearings
officer quoted the portion of the prior written notice that
stated that "[Student] has been successful in the fully self-
contained classroom and continues to require the services that he
has been receiving."  (Admin. Decision at 2 (emphasis added)
(quoting Admin. R. Ex. 5 at 38).)  There is nothing in the
officer's decision to indicate why Student would suddenly no
longer require services as of the end of the extended school
year.

      At best, from Defendant's perspective, the evidence
that Student had reached a plateau tends to contradict
Plaintiff's argument that Student's age was the sole rationale
for denying continued services.  The conflicting arguments
present genuine issues of material fact and preclude summary
judgment.

_____

      [15/] Plaintiff argues that the Court should not consider
Defendant's position because it was not presented to the
administrative hearings officer.  But the Court is required to
"hear additional evidence at the request of a party."  20 U.S.C.
§ 1415(i)(2)(C).

## IV. CONCLUSION

For the foregoing reasons, the Court (1) VACATES the Order of the Office of Administrative Hearings Granting Respondent's Motion to Dismiss Petitioners' Request for an Impartial Hearing, or in the Alternative, for Summary Judgment; and (2) REMANDS for further proceedings consistent with this order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, June 6, 2011.



_____
Alan C. Kay
Sr. United States District Judge

Aileen Y. ex rel. D.Y. v. Dep't of Educ., State of Hawaiʻi, Civ No. 10-00454 ACK-RLP: Order Vacating the July 6, 2010, Order of the Office of Administrative Hearings and Remanding for Further Proceedings